UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

THOMAS G. CULLEN,

       Plaintiff,

       v.                                      Case No. 05-C-0134

CITY OF WEST ALLIS;
CITIES & VILLAGES MUTUAL
INSURANCE COMPANY;
SCOTT POST,

       Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

       The plaintiff, Thomas G. Cullen (Cullen), initiated this lawsuit against defendants City of West Allis, Wisconsin (City), West Allis City Attorney Scott Post (Post),[1] and Cities & Villages Mutual Insurance Company (CVMIC), alleging civil rights violations pursuant to 42 U.S.C. § 1983 and breach of contract under Wisconsin law. Cullen claims that City Attorney Post violated his due process rights by terminating his employment as assistant city attorney without following applicable procedures under West Allis law. Cullen further claims that the City of West Allis violated its employment contract with him. Lastly, Cullen claims that Cities & Villages Mutual Insurance Company is liable as the City's insurance carrier for damages caused by these violations of his rights.

       The City now moves for summary judgment. It asserts that (1) Cullen resigned his position as assistant city attorney, and even if he was terminated, City Attorney Scott Post is entitled to qualified immunity; (2) no employment contract between Cullen and the City

---

[1] Post is being sued in his individual capacity, and at all relevant times, was acting within the scope of his employment with the City of West Allis. (Compl. ¶ 4; Answer ¶ 4.)

existed; and (3) CVMIC does not insure the City for employment actions. For the reasons stated below, this motion is granted.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Cullen was employed by the City of West Allis, Wisconsin, as an assistant city attorney from January 1988 until May 2002. (Compl. ¶ 1.) In March 2002, Post became West Allis City Attorney and Cullen's supervisor. (Post Dep. at 52.)

On April 29, 2002, Cullen was arrested by the City of Wauwatosa police for lewd and lascivious conduct. (Cullen Dep. at 24-38.) The arrest occurred in Hansen Park in Wauwatosa where Cullen went on his lunch hour. (*Id.*) Cullen was arrested by a reserve officer who was working undercover to stop sexual activities that had been reported in the park. In his report, the reserve officer noted that Cullen walked into the woods near the park, and while making eye contact with the officer, proceeded to masturbate. (Cullen Dep. Ex. 20.) The reserve officer then identified himself and arrested Cullen. (*Id.*)

Shortly after the arrest, Post was informed of the incident by the West Allis Deputy Chief of Police. (Post Dep. at 19.) Upon his return to the city attorney's office, Cullen called his mother to report the arrest, but he did not inform Post. (Cullen Dep. at 38.) Later that day, Post called Cullen into his office to discuss Cullen's arrest. (Post Dep. at 22.) During the meeting, Cullen denied having done anything wrong and stated he did not expose himself. (Cullen Dep. at 42.) When asked why he was in the park, Cullen explained that he was there to eat lunch and wanted some quiet time. (Cullen Dep. at 41.) After hearing Cullen's explanation, Post informed Cullen that he was suspended with pay while Post investigated the matter. (Cullen Dep. at 43-44; Post Dep. at 26-27.) Post informed Cullen that after he completed his investigation, they would meet again to discuss the arrest and Cullen's employment. (Cullen Dep. at 43.)

During his investigation of Cullen's arrest, Post contacted the reserve officer who arrested Cullen, read the police report, and spoke with the prosecutor about the undercover operation in Hansen Park. (Post Dep. at 27-30.) Post also researched Cullen's employment history with the City. Cullen had been disciplined twice: he received a written reprimand from his supervisor in 1997 relating to his arrest for assaulting a teenage friend of his daughter while intoxicated, and for viewing pornography on his office computer. (*See* Cullen Dep. 18-20). Moreover, Post reviewed with Assistant City Attorney Sherly Kuhary the ordinances and regulations that govern suspension and dismissal of city employees. (Post. Dep. at 37.) Subsequently, Post set up a meeting with Cullen and West Allis Mayor Jeanette Bell. (Post. Dep. at 32-33.) At the meeting, Post gave Cullen a copy of the police report. (Cullen Dep. at 44-45.) Again, Cullen denied wrongdoing and stated that the report was "a bunch of bullshit." (Cullen Dep. at 44-45; Post Dep. at 41-42, 45.)

Post asked Cullen questions about the incident. (Post. Dep. at 42.) At the end of the meeting, he informed Cullen that based on his investigation of his arrest and his review of Cullen's personnel file he felt Cullen should resign or be terminated. (Cullen Dep. at 45.) Cullen responded that he wanted to speak to an attorney. Post replied that Cullen was "terminated immediately" and asked for Cullen's office keys. (Cullen Dep. at 45-46.) Cullen handed Post his keys and Post gathered some personal items from Cullen's office that Cullen requested. (Post Dep. at 49.)

When Cullen was fired, three sets of regulations governed the suspension and termination of City of West Allis employees: section 2.67 of the West Allis Municipal Code, section 1403 of the City's Policies and Procedures Manual, and Rule X of the West Allis Civil Service Commission's Rules and Regulations.

Section 2.76 of the West Allis Municipal Code sets forth the procedures for discharging a city employee. This section provides that when a department head[2] finds that an employee should be suspended, demoted or dismissed, that person shall file a written report with the West Allis Civil Service Commission specifying the reasons for the complaint. W. Allis, Wis., Rev. Code § 2.76(a) (2003). The department head may suspend the employee at the time the complaint is filed. *Id.* The Commission then notifies the employee of the complaint and sets a date for a hearing. *Id.* If the employee wishes to be heard on the complaint, the employee must notify the Commission within ten days after notification of the hearing. § 2.76(b). At the hearing, the employee may be represented by counsel and may present evidence. *Id.* After the hearing, the Commission may take the action it deems appropriate, including reinstatement of the employee. § 2.76(b), (c). An employee's failure to notify the Commission within the time permitted is deemed a waiver of the employee's right to be heard and a bar to judicial review. *Id.*

The City's Policy and Procedures Manual references and expands on section 2.76 of the Municipal Code. Section 1403 of the Manual "describe[s] the procedures to be followed by . . . City departments when an employee . . . is subject to possible suspension or discharge." Similar to section 2.76 of the Code, section 1403 provides that the department head may suspend the employee at the time the complaint is filed with the Commission and shall inform the employee in writing of the decision to suspend. The Manual lists examples of cause for discharge. (*See* Compl. Ex. A.) Included are instances when the employee "(5) [h]as been guilty of any conduct unbecoming an officer or employee of the city . . ." and "(9) [h]as been guilty of acts which amount to an act of insubordination or to disgraceful conduct,

---

[2] It is not disputed that references to "Department Head" or "Appointing Authority" within the applicable provisions and procedures apply to Post in his position as City Attorney.

whether such conduct occurred while on duty or off duty. . . ." W. Allis, Wis., Policies and Procedures Manual § 1403(5.1.1).

Finally, City Civil Service Commission Rules and Regulations supplement and interpret provisions in the Municipal Code, including Code section 2.76. Rule X of the Rules and Regulations governs discharge, suspension, and demotion of City employees. It states that "the employee's department head has the authority to remove without pay, discharge, reduce in pay or demote any employee. . . . The appointing authority shall, at the time of any action under this section, furnish to the employee in writing the reasons therefore." Also, Rule X lists causes for discipline, including that the employee "(g) [h]as engaged in conduct which is not in the best interest of the City or Department." The Rule further states that the department head shall, when believing an employee is to be dismissed, report in writing to the Commission, and he or she can suspend the employee at the time of filing the report. W. Allis Civil Service Commission Rules and Regulations, Rule X, § 3. Any employee who "has been discharged or suspended from the service by an appointing authority, must request a hearing in writing with the Civil Service Commission within ten (10) days." *Id.* § 4 (notice of appeal).

After the May 2, 2002, meeting in which Post informed Cullen that he was terminated, Cullen consulted an attorney. (Cullen Dep. at 48-49.) On May 3, 2002, Cullen directed his attorney, William Green, to contact Post and request that he be reinstated with the city attorney's office or suspended with pay. (Cullen Dep. 52.) Attorney Green asked Post if he had issued a termination letter. At the time, Post was drafting a letter to Cullen detailing his investigation into Cullen's arrest and personnel file and noting that Cullen was terminated as of May 2, 2003. (Post Dep. 68-69; Post Dep. Ex. 6.) Post indicated in the letter that Cullen had the right to appeal the decision to the City's Civil Service Commission. (Post. Dep. Ex. 6.) Green asked Post not to issue the termination letter because Cullen will resign

6

his position. (Cullen Dep. 53-54.) On May 5, 2002, Cullen provided Post with a letter stating that "effective 5:00 p.m. Friday, May 3, 2002, . . . I resign from my position as Assistant City Attorney III from the City of West Allis." (Cullen Dep. Ex. 22.) Because of Cullen's resignation letter, Post did not finalize or send the termination letter he was drafting.

After leaving the West Allis City Attorney's office, Cullen applied for other positions with local government's in Wisconsin and Illinois. In an application filed with the City of Marshfield, Wisconsin, Cullen stated that he left the West Allis City Attorney's office for "career advancement." (Cullen Dep. at 73.) In an application filed with the City of Neenah, Wisconsin, in September 2002, Cullen stated that he left the West Allis position because of a "lack of career advancement opportunities." (Cullen Dep. at 73.) He made a similar indication in an application filed that month for a position as corporation counsel with Jefferson County, Wisconsin. (*Id.* at 76.) In his November 2002 application for employment with Ayres Associates, Cullen indicated that he left his West Allis position for a "career change." (Cullen Dep. at 73-74.) Cullen's February 2003 application for employment with the Urbana, Illinois, City Attorney's office stated that he "assume[d] West Allis would characterize [his] separation as a resignation to explore new career opportunities." (Cullen Dep. at 74-75.)

In April 2003, Cullen went to municipal court to contest his citation for lewd and lascivious behavior. (Compl. ¶ 27.) Cullen was able to have the charge dismissed, and in May 2003, he wrote to the City of West Allis administrator demanding reinstatement with the city attorney's office. (*Id.* at ¶ 28.) Cullen never heard from the City regarding this request. (*Id.*)

On February 4, 2005, Cullen filed suit in this court pursuant to 42 U.S.C. § 1983 alleging that Post violated his due process rights by terminating his employment at the May

2, 2002, meeting without going through the procedures required by the Municipal Code and the Policies and Procedures Manual of the City of West Allis. (Compl. ¶ 34-41.) Cullen contends that procedures for discharge under the Municipal Code and the Manual establish an employment contract and that the City violated that contract by terminating him without going through the proper procedures. (Compl. ¶ 47.) Cullen now seeks compensatory, actual, and punitive damages from the defendants.

### III.  DISCUSSION

#### A. Due Process

In approaching an employment due process claim, the court addresses two questions: (1) whether the plaintiff possessed a constitutionally protected property interest in his employment; and (2) if so, whether the defendants deprived the plaintiff of that interest without due process of law. *See William v. Seniff*, 342 F.3d 774, 786-87 (7th Cir. 2003). "[P]roperty interests in employment may be created by express or implied contracts, municipal ordinances or state laws—including those rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Domiano v. Village of River Grove*, 904 F.2d 1142, 1147 (7th Cir. 1990) (*quoting Farmer v. Lane*, 864 F.2d 473, 478 (7th Cir. 1988)). Here, the defendants concede that Cullen had a protected property interest in his position as assistant city attorney. (Defs.' Br. in Supp. of Mot. for Summ. J. at 18). Therefore, the court moves to the second prong to determine whether Post deprived Cullen of his right without due process of law.

Post first argues that Cullen resigned his position before being terminated by Post; therefore, he could not deprive Cullen of his employment interest. Cullen responds that he was terminated at the May 2, 2002, meeting in Mayor Bell's office, when Post informed him

that he was terminated "effective immediately."[3] For support, Cullen points to the termination letter drafted by Post, which that notes Cullen is terminated effective 5:00 p.m., May 2, 2002; and Post's deposition during which he testified that he told Cullen he would be terminating his employment with the City of West Allis at the end of the May 2, 2002 meeting. (*See* Pl.'s Response Br. in Opp. to Mot. for Summ. J. at 8.)

        At the heart of the matter, Cullen's employment with the City was ended either by termination or resignation, and the undisputed facts demonstrate that Cullen resigned before his termination was made final. First, and most important, it is undisputed that Cullen signed and submitted a letter of resignation on May 5, 2002. Further, Cullen's argument that he was officially terminated by Post on May 2, 2002, is undermined by discussions between Cullen's attorney and Post. Cullen directed Attorney Green to speak with Post about reinstatement or suspension with pay. Moreover, Cullen directed that if Post insists on termination, Green should tell Post to follow proper termination procedures. (Cullen Dep. at 52.) Green then inquired whether Post had prepared a termination letter and informed Post not to send the letter because Cullen will resign. In the draft letter, Post provided information on Cullen's right to appeal to the Civil Service Commission and cited Civil Service Commission Rule X, section 4, "Notice of Appeal." These facts lead to the conclusion that both parties believed Cullen's termination was not necessarily final on May 2, 2002, as Cullen had procedural options to contest Post's actions. Only because the termination process was not final on May 2, 2002, was Cullen able to submit a resignation letter and have the letter accepted. Once Cullen issued the resignation letter, it was not possible for him to be terminated, and thus not possible for Post to deprive him of his due process rights.

---

[3] What Post said to Cullen at the end of the May 2, 2002, meeting is in dispute. For the purposes of summary judgment, the court adopts Cullen's version of events.

Further, the Due Process Clause does not entitle a civil servant to the employers' exact adherence to termination procedures outlined in the West Allis Municipal Code. Instead, "procedural due process rules are shaped by the risk of error inherent in the truth finding process as applied to the generality of cases, not the rare exception." *Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998) (*citing Mathews v. Eldridge*, 424 U.S. 319, 344 (1976)); *see also Panozzo v. Rhoads*, 905 F.2d 135, 139 (7th Cir. 1990) ("States and municipalities are of course free to provide greater procedural protections than those offered by the federal constitution, but it does not follow that these enhanced protections enlarge federal rights. . . . [L]ocal rules do not act as a ratchet tightening the Due Process Clause.")

"Before one may be deprived of a constitutionally protected property interest in one's public employment . . . due process requires that a pre-termination hearing be held." *Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 503 (7th Cir. 1999) (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). "The required scope of that hearing depends on the other pre- and post-termination procedures available to the employee." *Id.* Where post-termination processes are available, the pre-termination hearing may be abbreviated. *See Panozzo, 905 F.2d at 139; see also Staples*, 142 F.3d at 385 ("[T]he pre-termination hearing should only be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. . . ." (*quoting Gilbert v. Homar*, 520 U.S. 924 (1997)). The pre-termination hearing must include three elements: "(1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity to tell his side of the story." *Staples*, 142 F.3d at 385.

The West Allis Municipal Code, the Policies and Procedures Manual, and the Civil Service Commission's Rules and Regulations all provide for administrative review of the department head's decision to suspend or seek the discharge of an employee. The relevant provisions of West Allis Municipal Code section 2.76 read as follows:

> 2.76: Suspension, Demotion and Dismissal Procedure, Unclassified and Classified Service.
>
> (a) Whenever a person possessing appointing power in the City believes that an employee . . . has acted in such a manner as to show the employee to be incompetent or to have merited suspension, demotion or dismissal, the appointing authority shall report in writing to the Civil Service Commission, setting forth specifically his or her complaint, and may suspend the employee at the time the complaint is filed. The Commission shall forthwith notify the accused employee of the filing of the complaint and, on request, provide the employee with a copy of same. Such notice shall be given by personal service or by certified mail addressed to the employee. . . .
>
> (b) The Commission shall appoint a time and place for the hearing of the complaint, the time to be within three (3) weeks after filing of the same, and notify the person possessing the appointing power and the accused of the time and place of such hearing. . . . If the employee against whom a complaint has been filed desires to present any evidence in defense or mitigation, he or she shall so notify the Commission, in writing, within ten (10) working days. The failure of such employee to provide the notice within the time prescribed shall be deemed a waiver of any right to be heard and a bar to judicial review. At the termination of the hearing, the Commission shall determine whether the charge is well founded and shall take such action by way of suspension, demotion, discharge or reinstatement, as it may deem requisite and proper under the circumstances and as its rules may provide. The Commission shall permit the accused to be represented by counsel at no expense to the City. The decision of the Commission shall be final and conclusive upon both the City and the accused. . . .

Similar procedures are outlines in section 1403 of the West Allis Policies and Procedures Manual:

11

1403: Disciplinary Action

1.0   PURPOSE:

To describe the procedures to be followed by the Personnel Division and other City departments when an employee in the classified service is subject to possible suspension or discharge.

. . .

5.0 PROCEDURES:

5.1.1 Causes of Suspension, Reduction or Discharge. For a classified employee to face a disciplinary action, the person possessing appointing power over that employee files a complaint in writing with the Civil Service Commission, setting forth the specifics. The following will be considered as causes for discharge, suspension or reduction; although discharges, suspensions or reductions may be made for other causes:

5.) Has been guilty of any conduct unbecoming an officer or employee of the City;

5.1.2 Suspension Upon Filing of Complaint. The Department Head may suspend the employee at the same time the complaint is filed with the Civil Service Commission. The Department Head shall inform the employee, in writing, of the decision to suspend, so that there will be no later misunderstanding regarding the ground for suspension or what was said.

5.1. Scheduling of Hearing. The Commission sets the time and place for the hearing on the charges, within three weeks of the filing of such charges, notifying the employee of the charges, the time and place of the hearing, and his or her rights under Section 2.76(7) of the Revised Municipal Code.

5.1.5 Waiver of Right to Hearing. Failure on the part of the accused employee to provide notice within the above time period that he or she wishes to be heard is deemed a waiver of the right to be heard and a bar to judicial review.

The West Allis Civil Service Commission, Rule X, provides as follows:

Rule X: Discharge, Suspension, Demotion

Section 1.  CAUSES FOR SUSPENSION, DEMOTION AND DISCHARGE.

The employee's department head has the authority to remove without pay, discharge, reduce in pay or demote any employee.
No suspension without pay shall be effective for more than thirty (30) days.  The appointing authority shall, at the time of any action under this section, furnish to the employee in writing the reasons therefore.

> The following are cause for discipline.  That an employee:
> . . .
> g)  Has engaged in conduct which is not in the best interest of the City or Department.

Section 3.  SUSPENSION, DEMOTION, DISMISSAL:
Whenever a person possessing appointing power believes that an officer or employee in the classified service in her/his department has acted in such a manner as to show her/him to be incompetent or to have merited suspension, demotion, reduction or dismissal, s/he shall report in writing to the Civil Service Commission, setting forth specifically her/his complaint, and may suspend the officer or employee at the time such complaint is filed.  The Commission shall forthwith notify the accused officer or employee of the filing of such charges, and, on request, provide her/him with a copy of the same.

If the officer or employee appeals any of the above actions, in accordance with the provisions of Section 4 of this rule, the Commission shall appoint a time and place for the hearing of said charges, the time to be within three (3) weeks after the filing of the same, and notifying the person possessing the appointing power and the accused of the time and place of such hearing. . . . The failure of such officer or employee to provide the notice within the time prescribed shall be deemed a waiver of any right to be heard and a bar to judicial review.  Absent a request for an appeal hearing, the action of the appointing authority will be approved by the Commission. . . . The decision of the Commission shall be final.  The officer or employee shall have the right to be represented by counsel at no expense to the City at said hearing. The Common Council shall provide counsel to advise the Commission upon request of the Commission.

Section 4.  NOTICE OF APPEAL.

13

> Any officer or employee in the classified service who has been discharged or suspended from the service by an appointing authority, must request a hearing in writing with the Civil Service Commission within ten (10) days. . . .

The parties agree that discrepancies exist among the procedures listed in the Municipal Code, the Policies and Procedures Manual, and the Civil Service Commission's Rules and Regulations. In particular, unlike the Code and the Manual, Rule X of the Commission's Rules and Regulations gives the department head the authority to discharge an employee for cause. The Rule then provides that any employee who has been discharged must request a hearing before the Civil Service Commission within ten days.

Here, it appears Post complied with Rule X, Section 4 of the Civil Service Commission Rules and Regulations but did not comply with exact procedures outlined in the Municipal Code and the Policies and Procedures Manual. However, under a due process analysis, it is not necessary for this court to distinguish the hierarchy of West Allis employment termination procedures as they applied to Cullen. All of the policies and procedures governing the suspension and discharge of a classified city employee provided Cullen the opportunity to present his case to the Civil Service Commission after the May 2, 2002, meeting. Cullen acknowledges that the Civil Service Commission had the ultimate authority to terminate his employment. (Compl. ¶ 37.)

Cullen's claim that Post deprived him of the opportunity to go before the Civil Service Commission is negated by evidence that he submitted a letter of resignation; he stopped Post from sending a termination letter and stopped the process from moving forward. *See Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333-34 (7th Cir. 2004) ("The only way to know how matters will turn out is to let the process run its course. Litigation to determine

14

what would have happened, had the employee contested the recommendation, is a poor substitute for the actual results of real deliberation within the employer's hierarchy.").

Under these unique circumstances, for the purposes of due process, Cullen had post-deprivation procedures available to him after his May 2, 2002, meeting with Post. Regardless, he chose to submit a letter of resignation on May 5, 2002, and not contest Post's decision before the Civil Service Commission. However, assuming for the moment that Cullen did not resign his position, Post did not violate Cullen's due process rights inasmuch as he satisfied the *Loudermill* requirements in the pre-termination meetings with Cullen on April 29 and May 2, 2002. Cullen was provided oral notice of charge against him and the employer's evidence, knew it could result in his being fired, and was provided opportunities to defend himself before his superiors. Because a pre-termination due process hearing need only provide the employee notice of the charges, evidence against him, and an opportunity to be heard, Cullen's due process rights were not violated regardless of his resignation letter.

Cullen's alternative argument that he was constructively discharged and forced to resign fails also. Typically, to succeed on a constructive discharge claim, "a plaintiff must prove that the defendant engaged in 'harassing behavior sufficiently severe or pervasive to alter the conditions of [his] employment' and that 'the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Witte v. Wis. Dep't of Corrections*, 434 F.3d 103, 1035 (7th Cir. 2006) (*quoting Penn. State Police v. Suders*, 542 U.S. 129, 133-34 (2004)). This approach to constructive discharge applies to hostile work environment claims as well as due process claims. *Id.* (*citing Levenstein v. Salafsky*, 414 F.3d 767, 744 (7th Cir. 2005)). For support, Cullen cites language in *EEOC v. University of Chicago Hospitals*, 276 F.3d 326, 332 (7th Cir. 2002), stating "[w]hen an employer acts in a

manner so as to have communicated to a reasonable employee that [he] will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge."  Relying on this language, Cullen contends that Post's statement that he should resign or he would be terminated amounted to constructive discharge on May 2, 2002. (Pl.'s Br. in Opp. to Mot. for Summ. J. at 9.)

Cullen's reliance on *EEOC v. University of Chicago Hospitals* is misplaced. The Seventh Circuit, in *Cigan v. Chippewa Falls School District*, rejected the concept that *EEOC v. University of Chicago Hospitals* supports a finding of constructive discharge where a history of unendurable working conditions is not evident.  388 F.3d at 333 (dismissing plaintiff's contention that she was constructively discharged when her employer notified her that he was seeking her termination; the court noted that such a position "would take us a long distance indeed from 'unendurable working conditions' and require the courts to engage in speculation").

Further, courts addressing a constructive discharge claim with similar circumstances apply a presumption that an employee who resigns does so voluntarily. *Christie v. United States*, 518 F.2d 584, 588 (Ct. Cl. 1975).  This presumption may be overcome by evidence that the employee was not given a free choice. *Austin v. Turner*, No. 04CV1149, 2006 U.S. Dist. LEXIS 62445, *6 (E.D. Wis. Aug. 31, 2006) (*citing Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992)).  The standard is an objective one in which the court may look to (1) whether defendant offered the employee an alternative; (2) whether the employee understood the nature of the choice before him; (3) whether the employee had a reasonable time in which to make a decision: (4) whether the employee had the opportunity to choose the date of his resignation; and (5) whether the employee had the

advice of counsel. *Id.* at *7; *Stone v. Univ. of Md. Medical Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988). The fact that the employee was given a choice between unpleasant alternatives—submitting a resignation to avoid termination for cause—does not itself demonstrate involuntariness. *Austin*, 2006 U.S. Dist. LEXIS 62445, *6; *Stone*, 855 F.2d at 174; *Christie*, 518 F.2d at 588 ("This court has repeatedly upheld the voluntariness of resignations where they were submitted to avoid threatened termination for cause."); *Illinois v. Bd. of Educ. of Morton High Schools*, 606 F. Supp. 385, (N.D. Ill. 1985) ("[E]ven where the employee is told that he must choose between resignation and separation, the subsequent choice of resignation is not coerced unless the employee can show that his superior knew or believed that the reasons for the proposed separation could not be substantiated." (*quoting Cosby v. United States*, 417 F.2d 1345 (Ct. Cl. 1969)).

Here, the record does not support Cullen's contention that he was constructively discharged. Cullen was given a choice: he could resign or be discharged. If Cullen chose not to resign, he had the ability to contest Post's actions before the Civil Service Commission. Moreover, the record shows that Cullen understood the nature of the choice before him; he has stated that he resigned in order to increase employment opportunities. Finally, Cullen chose to resign after consulting with legal counsel. He hired Attorney Green to contact Post to discuss possible reinstatement or suspension with pay, and it was Attorney Green who informed Post that Cullen would rather resign than be discharged. While it appears Cullen was not given much time to make a decision, the nearly three days between the meeting with Post on May 2, 2002, and the submission of his resignation on May 5, 2002, cannot be considered unreasonable under the circumstances. As such, no reasonable jury could find that Cullen's resignation was involuntarily submitted.

17

## IV. QUALIFIED IMMUNITY

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining qualified immunity, a court must apply a two-step sequential test. The initial inquiry is whether, taking the facts in the light most favorable to the party asserting the injury, the facts alleged show that the employer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second step is to ask whether the right was "clearly established" at the time of the claimed violation. *Id*. Once a defendant asserts qualified immunity, the burden is on the plaintiff to show that the right in question was clearly established. *Perry v. Sheahan*, 222 F.3d 309, 315 (7th Cir. 2000). However, once it is demonstrated that no constitutional violation occurred, there is no need for further inquiry.

Here, Cullen's letter of resignation ended his employment with the City of West Allis. As such, there could be no constitutional violation and the court's inquiry into whether Post was entitled to qualified immunity ends.

## V. BREACH OF CONTRACT

Cullen maintains that the West Allis Municipal Code and the West Allis Policies and Procedures Manual established a contractual relationship under Wisconsin law between himself and the City, which was breached by the City when it failed to follow proper procedures in terminating him. This court's jurisdiction to consider this state law claim is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367, which confers federal courts with jurisdiction over state claims "that are so related to claims in the action within such

18

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). When a federal court dismisses the predicate federal claim, the usual course is to dismiss the state claims unless there is a countervailing reason to decide the state claim on the merits. *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998).

Here, the court declines to exercise supplemental jurisdiction over Cullen's breach of contract claim. *See* 28 U.S.C. § 1367(c)(2) ("The district court may decline to exercise supplemental jurisdiction over a claim [if] . . . (3) the district court has dismissed all claims over which it has original jurisdiction. . . .") The principles of Wisconsin law governing breach of contract differ from those governing Cullen's due process claim, and Cullen presents no case law supporting his assertion that a contract was created under the circumstances. Under Wisconsin law, the statute of limitations on a breach of contract action has not expired, providing Cullen the opportunity to litigate this matter in state court. *See* Wis. Stat. § 893.43 (limitation on contract action is six years).

Now, therefore,

IT IS ORDERED that the defendants' motion for summary judgment is GRANTED.

Dated at Milwaukee, Wisconsin, this 10th day of October, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge